Judge BAKER
delivered the opinion of the Court.
Appellant was tried by special court-martial before a military judge alone. Pursuant to his pleas, Appellant was convicted of two specifications of failure to obey a lawful order in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2000), and one specification of assault in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2000). Appellant was sentenced to a bad-conduct discharge, confinement for 100 days, partial forfeitures, and reduction to E-1. The convening authority approved the sentence as adjudged and, with the exception of the bad-conduct discharge, ordered it executed. The Navy-Marine Corps Court of Criminal Appeals found no error and af *90 firmed. United States v. Simmons, No. NMCCA 200300528 (N.M.Ct.Crim.App. Nov. 15, 2004) (unpublished). We granted review of the following issue:
WHETHER A DUTY TO INTERVENE ARISES FOR PURPOSES OF AIDER AND ABETTOR LIABILITY WHEN A SUPERIOR WITNESSES THE COMMISSION OF AN OFFENSE BY OR AGAINST A SERVICE MEMBER IN HIS CHAIN OF COMMAND.
We hold that such a duty may arise, however, it must be accompanied by shared criminal intent for aider and abettor liability to attach.

Background

Appellant’s conviction grew out of an incident in Appellant’s barracks room between two members of his platoon, Corporal (CPL) Schuknecht and Private First Class (PFC) Whetstone. During the providence inquiry, the military judge asked Appellant about the facts leading up to the assault. Appellant responded:
ACC: It was one of our friend’s birthday [sic] that night, sir; and we were getting ready to go out; and Corporal Schuknecht—well, me and Whetstone had got in an argument because I told him to leave the room and he wouldn’t leave, sir, because he was drunk and I told him to leave; and when he walked away from me, he, like, mumbled something; and I didn’t hear him mumble anything. That’s just what I was told, and Corporal Schuk-necht got in his face and grabbed him by the neck and threw him against the rack and yelled at him; and they went outside, sir.
Appellant pled guilty to aiding and abetting CPL Schuknecht’s assault of PFC Whetstone consummated by a battery.
While explaining the elements of the offense to Appellant,[1] the military judge noted the following:
MJ: An aider or abettor must knowingly and willfully participate in the commission of the crime as something that he or she wishes to bring about, and must aid, encourage, or incite the person to commit the criminal act____
Now, normally, presence at the scene of a crime is not enough, nor is failure to prevent the commission of an offense. It must be an intent to aid or encourage the persons who commit the crime.
On the other hand, if the accused witnessed the commission of the crime and had a duty to interfere but did not because he wanted to protect or encourage, in this case Corporal David E. Schuknecht, then he or she is considered to be a principal.
After explaining these elements, the military judge asked Appellant whether “these elements that I just described to you ... correctly describe what happened to [sic] this occasion?” Appellant responded, ‘Yes, sir.”[2]
In response to the military judge’s specific question as to how he thought he was “criminally responsible” for the assault, Appellant offered the following: “Because my inaction encouraged it, sir, because I’m an NCO [non- *91 commissioned officer] in Whetstone’s platoon and I should have stepped in and stopped it, sir; but I didn’t.” Appellant further indicated that the assault lasted “for about ten seconds” and that he “had time to step in” but did not. However, when the military-judge asked Appellant, “[d]id you know that Corporal Schuknecht was going to grab PFC Whetstone about the throat?,” Appellant responded, “[n]o sir.”
The military judge revisited the issue of Appellant’s intent and the two had the following exchange:
MJ: And during the ten-second interval, rather than stepping in and trying to prevent harm to your junior Marine, you just sat there and watched?
ACC: Yes, sir.
MJ: Did you actively encourage Corporal Schuknecht to assault—
ACC: By not doing anything, sir, I think that—
MJ: But you didn’t yell at him and say, [sic] “Get him or do it some more,” did you?
ACC: No, sir.
MJ: You just sat there and did nothing?
ACC: Yes, sir.
With regard to his duty to intervene, the military judge and Appellant had the following exchange:
MJ: And do you believe that and admit that even though you may not have anticipated that Corporal Schuknecht was going to do what he did, that when he did do that, that you had an obligation and a legal duty to stop that from happening?
ACC: Yes, sir.
MJ: And you had the obligation why?
ACC: I was the NCO in PFC Whetstone’s platoon, sir; and I should have stepped in.
On review, the lower court concluded that Appellant’s guilty plea to assault was provident:
[A]ppellant admitted that, as the noncom-missioned officer directly supervising the victim, he had a duty to intervene to stop another corporal from grabbing a junior Marine by the throat, and that his inaction operated to encourage his friend’s misconduct. Although the military judge could have conducted a more thorough inquiry regarding this charge, we find the facts the appellant admitted to fairly met the requirements of the Manual for Courts-Mar-tial____
Simmons, No. NMCCA 200300528, slip op. at 2.
Appellant challenges his conviction on the basis that he did not share CPL Schuknecht’s criminal intent when the latter assaulted PFC Whetstone in Appellant’s barracks room. According to Appellant, by affirming his conviction, the lower court failed to follow the mandate of Article 77, UCMJ, 10 U.S.C. § 877 (2000), and created a new standard of liability that ignores the concept of mens rea necessary to establish aider and abettor liability.
Appellant, in his brief, concedes that he had a duty to intervene in the fight between CPL Schuknecht and PFC Whetstone. However, according to Appellant, federal law also requires knowledge on the part of the accused that he is sharing in the criminal venture and its purpose as an essential element of the crime of aiding and abetting. Appellant cites United States v. Jackson, 6 C.M.A. 193, 201, 19 C.M.R. 319, 327 (1955), for the proposition that mere inactive presence at the scene of a crime does not establish guilt.
In response, the Government argues that Appellant’s failure to intervene served as encouragement, which is in and of itself sufficient to sustain the conviction for assault on the theory of aiding and abetting. In support of its position, the Government cites two lower court cases, United States v. Void, 17 M.J. 740, 743 (A.C.M.R.1983), and United States v. Toland, 19 C.M.R. 570 (N.B.R.1955). According to the Government, both cases stand for the proposition that inaction can lead to an inference of aid or encouragement and therefore liability as a principal under Article 77, UCMJ.

*92
Discussion

“Pleas of guilty should not be set aside on appeal unless there is ‘a substantial basis in law and fact for questioning the guilty plea.’” United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F.1996) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991) (quotation marks omitted)). “A military judge’s decision to accept a guilty plea is reviewed for an abuse of discretion.” Id. (citing United States v. Gallegos, 41 M.J. 446 (C.A.A.F.1995)).
A military judge may not accept a guilty plea unless he makes “such inquiry of the accused” that satisfies him of a “factual basis for the plea.” R.C.M. 910(e). See United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969) (“[T]he record of trial ... must reflect ... that the military trial judge ... has questioned the accused about what he did or did not do, and what he intended____”). “[T]he accused must admit every element of the offense(s) to which the accused pleads guilty.” R.C.M. 910(e) Discussion. See United States v. Barton, 60 M.J. 62, 64 (C.A.A.F.2004) (“[The] factual predicate is sufficiently established if ‘the factual circumstances as revealed by the accused himself objectively support that plea.’ ”) (quoting United States v. Davenport, 9 M.J. 364, 367 (C.M.A.1980)); see also United States v. Jordan, 57 M.J. 236, 239 (C.A.A.F.2002) (finding that “ ‘mere conclusions of law recited by an accused ... are insufficient to provide a factual basis for a guilty plea’ ”) (quoting United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F.1996)).
According to the explanation accompanying Article 77, UCMJ, to be guilty as a principal under an aiding and abetting theory, a person must:
(i) Assist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense; and
(ii) Share in the criminal purpose of design.
In some circumstances, inaction may make one liable as a party, where there is a duty to act. If a person ... has a duty to interfere in the commission of an offense, but does not interfere, that person is a party to the crime if such a noninterference is intended to and does operate as an aid or encouragement to the actual perpetrator.
Manual for Courts-Martial, United States pt. IV, para. l(b)(i), (ii) (2005 ed.) (MCM)', see United States v. Crouch, 11 M.J. 128 (C.M.A.1981) (upholding an aiding and abetting conviction where appellant had a duty to act because, while performing guard duty, he failed to stop two servicemembers from breaking into a military motor pool). However, “[m]ere presence at the scene of a crime does not make one a principal.” MCM pt. IV, para. l.b.(3)(b), cited in United States v. Pritchett, 31 M.J. 213, 217 (C.M.A.1990).
In United States v. Thompson, this Court inferred criminal intent from the appellant’s affirmative acts, including contributing to the rape victim’s intoxication and providing the condom to his friend responsible for the actual assault. 50 M.J. 257, 258 (C.A.A.F.1999). Furthermore, this Court found that Thompson “knew SGT [Sergeant] Timmons was going to have intercourse with PFC K” and he encouraged SGT Timmons by failing to dissuade him. Id. (emphasis added).
Similarly, in United States v. Jackson, this Court upheld Jackson’s conviction by inferring shared criminal purpose from the circumstances surrounding the murder of a German national by Jackson’s companion. Bums, 6 C.M.A. 193, 203, 19 C.M.R. 319, 329 (1955). “Both accused were armed with knives; both were aggressive; and Jackson knew that Burns had a predisposition to ‘fool’ with his knife. A homicide resulting from an assault under such circumstances is sufficient to support a conviction for murder.” Id. In support of this same principle of law, the Government also cites Void and Toland.
By contrast, in United States v. Lyons, this Court found insufficient evidence from which to infer criminal intent to steal a truckload of coffee. 11 C.M.A. 68, 71, 28 C.M.R. 292, 295 (1959). “[T]he only circumstance tending to show participation by the accused is his acceptance of [the] offer of a *93 bribe. That connection is insufficient to establish a conscious sharing of the alleged intent of the co-actors.” Id.

Analysis

Article 77, UCMJ, first element

Before this Court, Appellant adopts his concession to the military judge that he had a duty to intervene and stop the fight between CPL Schuknecht and PFC Whetstone on the basis that Appellant “was the NCO in PFC Whetstone’s platoon” and he “should have stepped in.” As to Appellant’s admission of duty, we conclude there is no substantial basis in law and fact to question the sufficiency of the plea under the first element of Article 77, UCMJ.
Indeed, applicable Navy and Marine Corps regulations evidence 230 years of the custom and tradition of the service creating the type of duty espoused by Appellant before this Court and in his colloquy with the military judge. See U.S. Marine Corps, Leading Marines, MCWP 6-11, paras. 1100.2.d.(l), (3), 1100.4.b., 1100.5. (Nov. 27, 2002); Dep’t of the Navy, Begs. 1990, paras. 1023, 1034.1., 1034.2., 1037, 1131 (Sept. 14, 1990); see also Dep’t of the Navy, Marine Corps Manual, paras. 0002.1., 0003.2., lOOO.l.b., 1002.3.a., 8.a.l., 1301.1. (Mar 21, 1980) (making Navy regulations applicable to Marine Corps personnel).

Article 77, UCMJ, second element

Appellant focuses his argument on the second element of Article 77, UCMJ. Specifically, Appellant points to his lack of knowledge with regard to CPL Schuknecht’s intent prior to the assault and the relative quickness of the entire incident.' As noted, during the providence inquiry, Appellant specifically disavowed any prior knowledge of the assault and testified that the entire event took about ten seconds.
The Government asserted in its brief that “absence of action where there is a clear duty and ability to act is akin to an affirmative act and equally indicative of the requisite mens rea.” However, this argument goes too far. Establishment of a duty to intervene, without more, does not per se satisfy the requirement of a shared purpose under Article 77, UCMJ. Both parties cite cases in which this Court found aider and abettor liability premised on inaction. Failure to act in accordance with a legal duty can reflect criminal intent. However, this is a fact-specific inquiry and the facts of this plea inquiry fail to establish such shared intent. As such, we find that there is a substantial basis in fact to question the sufficiency of Appellant’s guilty plea.
Here, the facts on the record do not establish that Appellant shared CPL Sehuknecht’s criminal intent. Although he might have intended to haze PFC Whetstone, a charge he also pled guilty to, this does not necessarily mean that he intended for CPL Schuknecht to assault PFC Whetstone. By contrast to Thompson, Appellant did not know of CPL Schuknecht’s plan to assault PFC Whetstone (in fact, even CPL Schuknecht may not have known of his intent to do so until the moment he engaged in the assault), nor did he provide any affirmative assistance to CPL Schuknecht in the ten seconds it took CPL Schuknecht to assault PFC Whetstone. The Government argues that Appellant, by his inaction, encouraged CPL Schuknecht. However, the Government is mistaking intent and result. Article 77, UCMJ, is conjunctive; it requires a finding of encouragement, for example, a result plus an intent. Here, while the facts on the record might support a finding of a result, they do not support a finding of intent. Here, Appellant specifically denied any knowledge of CPL Sehukneeht’s intent to assault PFC Whetstone. Although Appellant may have shared Schuknecht’s intent, without further factual development on the record, CPL Sehuk-necht’s actions were too spontaneous and too quick to draw such an inference without further inquiry into the facts. As a result, Appellant’s case is distinguishable from the circumstances present in Thompson and Jackson. If the assault had lasted longer, or if the record reflected some affirmative action on Appellant’s part, then, perhaps this *94 Court could infer shared criminal intent. However, those are not the facts of this case.[3]
As a result, because Appellant did not admit on the record to all the elements of the offense, in this case the requisite mens rea, we hold that there is a substantial basis in law and fact to question the guilty plea.
The parties raised the issue of whether dereliction in the performance of duty is a lesser included offense that can be affirmed in this case. We need not reach this issue because, even assuming it is a lesser included offense in this case, affirming it would have no effect on Appellant’s sentence.[4] Therefore, we do not address the parties’ arguments on this point.
DECISION
For the reasons stated, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed as to specification 2 of Charge III and that specification and the charge are dismissed. The decision as to the remaining findings and the sentence is affirmed.

. The charge sheet states: “CHARGE III: VIOLATION OF THE UCMJ, ARTICLE 128 .... SPECIFICATION 2: In that Corporal Jessie C. SIMMONS, JR., U.S. Marine Corps, 3d Battalion, 8th Marine Regiment, 2d Marine Division, Camp Lejeune, North Carolina, did, on board Camp Lejeune, North Carolina, between about January 2002 and 9 April 2002, standby and do nothing to prevent the unlawfully] grabbing of Private First Class Robert L. WHETSTONE, U.S. Marine Corps, around his throat[.] by the hand of Corporal David E. SCHUKNECHT, tbS. Marine Corps." The additions and deletions were noted on the record after a conference pursuant to Rule for Courts-Martial (R.C.M.) 802.

. Even if we were to accept that in responding "yes,” Appellant was admitting to each of the elements without actually revealing the factual basis for his response, thereby satisfying the requirements of R.C.M. 910(e), there would still be a substantial basis in fact to question the provi-dency of the plea based on Appellant’s later, inconsistent statements with regard to his intent. United States v. McCrimmon, 60 M.J. 145, 152 (C.A.A.F.2004) (quoting Article 45, UCMJ, 10 U.S.C. § 845 (2000); United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F.1996)).

. As noted, in support of its argument, the Government also cites to two other lower court cases, Void and Toland. However, the Government’s argument is misplaced with regard to both cases. In Void, the facts were similar in that the accused did not actively engage in the multiple assaults for which he was found guilty of aiding and abetting. 17 M.J. at 741-42. In Void, the accused was a bystander in a series of assaults, all occurring within a short period of time. As the court noted, after the first assault, "appellant had no doubts about the intentions and activities of the others.” Id. at 743. From those facts, the court could properly infer encouragement and shared criminal intent, even absent active participation in the subsequent assaults. Likewise, in Toland, although the accused did not ultimately participate in the theft of items from the ship's store, he knew of his cohorts' plan; it was the accused who, with his keys to the store, left it open for them to carry out the plan. Furthermore, the accused originally intended to participate, although he later changed his mind. 19 C.M.R. at 571.

. The maximum punishments for dereliction of duty through neglect and simple assault are the same. Compare MCM pt. IV para. 16(e)(3)(A), with MCM pt. IV para. 54(e)(1)(A).